**In the Interest of P.W., Respondent,**

**v.**

**A.W., etc., and W.W. and C.W., etc., Appellants.**

**No. 46849.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 9, 1984.

Robert D. Benjamin, Clayton, for appellants.

William R. Seely, Clayton, for respondent.

Frank J. Kaveney, Clayton, Guardian Ad Litem.

REINHARD, Judge.

This is an appeal from a judgment of the juvenile court declaring Baby· Paul to be a neglected child because of child abuse, § 211.031, RSMo. 1978. The child was placed in the custody of the Division of

Family Services, which was authorized to place him in foster care, § 211.181, RSMo. 1978.

Paul was born to Angela, the unmarried daughter of Walter and Carolyn W. At the time of the dispositional hearing, Walter and Carolyn were 45 and 41 years of age, respectively. Angela was 22 years old when Paul was born and lived in her parents' home. The identity of the child's father was unknown; however, on occasion, Angela alleged him to be Ricky W. Walter and Carolyn have three other children: a married daughter, a son entering college and another in high school.

Immediately prior to Paul's birth on March 15, 1982, Angela made certain statements to nurses at St. Louis County Hospital. She denied the pregnancy, claimed the child's father was the devil and threatened to cut the child up and feed it "to the dogs." As a result, on March 18, 1982, proceedings were initiated in the Juvenile Division of St. Louis County Circuit Court for temporary detention of Paul on the ground that he was at risk due to the mother's psychiatric illness and bizarre behavior. Dr. de Sylvia, a psychiatrist at County Hospital, stated there was a risk to Paul in his mother's care due to her "active psychosis." Therefore, on March 19, 1982, the child was temporarily placed with the Missouri Division of Family Services for foster care.

On March 22, 1982, the juvenile officer filed a neglect petition alleging that Angela neglected and refused on March 15, to provide the care necessary to Paul's well-being. The court held a detention hearing at which appellant's present attorney entered his appearance as both attorney for Angela and for the maternal grandparents, Walter and Carolyn. At that hearing, the mother's position was that the child should be released to her "with rules." The juvenile officer's position, similarly, was that the child should be released to Angela "with rules and evaluation and treatment by a psychiatrist."

Following the hearing, the court released Paul to his mother under the following special conditions:

> Maternal grandparents are to provide complete supervision of the daughter Angela with her baby, Paul, until further notice from the Court. Family is to cooperate and meet with the DFS worker as indicated by the worker. Angela ... is to undergo psychiatric evaluation and sign a release of evaluation information to the Court for this information when requested.

From March 23, 1982 to May 31, 1982, Paul remained with Angela in the grandparents' home. During this time and pursuant to a Division of Family Services request, Angela was taken to a psychiatrist at Malcolm Bliss Hospital; altogether she was examined by at least four psychiatrists. Helen Moellering, a Division of Family Services social worker, supervised Paul's care during this period and maintained close contact with the family. She reported that Angela began attending parenting classes and seemed to enjoy them. The home of Walter and Carolyn was always neat and the baby appeared well cared for whenever Mrs. Moellering saw him. She further related that on one occasion, she arrived at the home to find Angela in the bathroom and experienced difficulty in getting her to come out.

On March 24, 1982, a guardian ad litem was appointed and the hearing on the petition for neglect was set for May 10, 1982. At that hearing, Angela admitted the truth of the allegations in the March petition. Consequently the court took jurisdiction over Paul, pursuant to § 211.031, RSMo. 1978, and ordered, among other things, "legal and physical custody of said juvenile is placed with Angela ... subject to supervision by the Missouri Division of Family Services.... Angela ... is ordered to participate in either psychological or psychiatric counseling should Division of Family Services deem it appropriate."

On Sunday, May 30, 1982, Walter returned home and found the door locked. He knocked on the door but Angela failed

to respond; finally he used his key to enter the house. He found Angela perspiring heavily, on her knees next to his bed praying; Paul was lying on the bed. The next day, May 31, 1982, was a holiday; Walter and Carolyn left their home for some time to visit their other daughter. During that evening, Paul was stabbed in the chest. Ricky W. discovered the wounded child in the grandparents' house; Angela stood nearby holding a knife. She later gave a statement to police admitting the stabbing.

On June 1, 1982, a second detention order was entered placing the child in Children's Hospital based on information newly furnished by the juvenile officer to the juvenile court. The basis for this order was the stabbing and a diagnosis from Dr. Gilpin indicating that Angela suffered from schizophrenia in remission. A supplemental neglect petition was also filed after the stabbing alleging, among other things, that "the natural mother ... did stab the juvenile with a butcher knife with an 8 inch blade in the chest area of the juvenile thereby causing juvenile to sustain the following injuries, to-wit: a long, deep cut extending across the upper chest of the juvenile."

At the detention hearing on June 10, 1982, the court ordered that the child be detained by the Division of Family Services and remain in foster care.

A hearing on the supplemental petition took place September 10, 1982. The court found the allegations to be true, continued its jurisdiction and ordered the matter set for disposition. On October 14, 1982, the grandparents filed a motion for joinder of parties based on Rules 52.04 and 52.05. Although they sought joinder, the grandparents referred to themselves as intervenors and alleged a right to intervene in that they previously had been physical custodians of the child; they had liberty and property interests in the care, custody and control of the child; their interests would be materially affected by the trial court's action; and their presence was necessary for a just adjudication. Motion for joinder was denied on the morning of the dispositional hearing, November 29, 1982. At the hearing, however, the same attorney represented both the mother and the grandparents. After the evidence was heard, both the attorney for the grandparents/mother and the guardian ad litem, recommended that custody be given to the grandparents. The juvenile officer recommended otherwise. The trial court found Paul to be neglected and ordered legal and physical custody of the child be placed with the Division of Family Services for placement in foster care subject to the Division of Family Services' supervision. The court further ordered that the mother be denied visitation and/or temporary custody pending further order of the court and that the maternal grandparents be granted reasonable rights of visitation, subject to the Division of Family Services' supervision. Mother and grandparents appeal.

Appellants' first challenge alleges that the court erred in failing to permit intervention by the grandparents. They contend that the grandparents are necessary parties to this action. Appellants further contend that placement with the grandparents was in the child's best interest. They also allege that the court erred in denying the natural mother any visitation rights. In these matters, the guardian ad litem agrees with the court's determination that the mother should have no visitation rights, but disagrees with the court's failure to grant physical custody of the child to the grandparents. The guardian ad litem further challenges evidentiary support for various court findings concerning the grandparents.

The evidence presented at the hearing established that Walter and Carolyn had been married 26 years; the only marriage for each. Both are employed full-time and earn a combined income of approximately $39,000.00. They own their home in University City, Missouri and owe approximately $13,000.00 on this $70,000.00 house, as well as $7,000.00 for a home improvement loan. Their house was always neat, clean and nicely furnished. They also owe approximately $1,000.00 to a credit union,

and have other small obligations. There was evidence that at one time Carolyn received a ticket for driving while intoxicated. She denied the charge; the matter has not been prosecuted.

Angela was, at the time of the hearing, apparently incarcerated at Gumbo for stabbing Paul. The testimony of two social workers and the juvenile officer indicates that their main objection to placing Paul with his grandparents was not that they would not be good custodians for the child, but rather, that they were fearful that Paul would come in contact with Angela when she is released from either the psychiatric hospital or from jail, and again come to harm. On this matter, both the grandfather and grandmother testified that if the court ordered, that they would not permit their daughter to come into their home while Paul was in their care. The juvenile officer also presented evidence that the grandparents were reluctant to recognize Angela's illness, and evidence of some minor instances which they believed showed a lack of concern for Paul.

■ As to appellants' first contention, we find no error in the trial court's failure to permit grandparent intervention. They base their claim upon § 211.181, RSMo. 1978, which provides, in pertinent part:

When a child is found by the court to come within the applicable provisions of section 211.031, the court shall so decree and make a finding of fact upon which it exercises its jurisdiction over the child and the court may, by order duly entered, proceed as follows:

(1) Place the child under supervision in his own home or in custody of a relative or other suitable person upon such conditions as the court may require;

(2) Commit the child to the custody of

(a) A public agency or institution authorized by law to care for children or to place them in family homes;

(b) Any other institution or agency which is authorized or licensed by law to care for children or to place them in family homes;

(c) An association, school or institution willing to receive it in another state if the approval of the agency in that state which administers the laws relating to importation of children into the state has been secured;

(d) The juvenile officer; or

(3) Place the child in a family home;

.    .    .    .    .

The grandparents reason that this statute gives them preference because they are relatives and were, in effect, physical custodians of the child while both Angela and Paul were present in their house. Although the issue of grandparent intervention in a neglect proceeding has not been directly addressed by a Missouri court, the right to intervene was denied in *Kambitch v. Ederle,* 642 S.W.2d 690 (Mo.App.1982) wherein natural grandparents sought intervention in an adoption proceeding. Grandparents cite to us *In the Interest of JR and SR,* 315 N.W.2d 750, 752 (Iowa 1982) which was not a neglect proceeding but instead involves termination. The Iowa Supreme Court determined that the trial court should have permitted intervention, but concluded that it was unnecessary to remand because the grandparents' interests had been sufficiently protected in the hearing. The present case is not a termination proceeding. We determine that the court properly prevented intervention, but our decision is limited to the circumstances of this case. Like the Iowa case, here the grandparents' position was adequately presented at the hearing.

This court is also cognizant of a Florida case, *Ruyle v. Murphy,* 422 So.2d 318 (Fla. App.1982), in which grandparents sought to intervene in a modification of child custody proceeding. There the court denied intervention, finding that they lacked legal standing. *Id.* at 319. However, since the grandparents had been physical custodians of the child for three years and the best interests of the child was of paramount concern, the grandparents, nevertheless, had a right to be heard. *Id.* We believe our holding is consistent. In the present case, both grandparents testified and

presented substantial evidence favorable to placement of Paul in their home.

We further find that the court's order as to temporary custody of Paul is supported by the evidence. The guardian ad litem points out that several findings of fact as to the grandparents are not supported by the evidence. In some of these, we agree; however, based upon the entire record, we cannot fault the trial court for its decision.

The evidence clearly supports a finding that the grandparents would make excellent custodians of the child. It further supports the determination that mother should not have visitation rights. However, the fact that the grandparents would be good custodians is not the sole consideration. Of utmost concern is the welfare of the child. Here, the court had a right to be concerned about the overall relationship between Walter, Carolyn, Angela and Paul, since it might affect Paul's safety. The court is not required to wait until the child is injured. *See M.P.G. v. J.E.G.*, 671 S.W. 2d 312 at 315 (Mo.App..W.D.1984). Thus, we affirm the trial court's order that Paul should not be placed with his grandparents at this time. However, as in any juvenile proceeding, this determination is subject to further consideration at a later time.

Judgment affirmed.

KAROHL, P.J., and CRANDALL, J., concur.