**In the Interest of I.M.B., Plaintiff.**

**JUVENILE OFFICER OF JOHNSON COUNTY, Respondent,**

v.

**B.C., Natural Mother, Appellant.**

No. WD 49320.

Missouri Court of Appeals, Western District.

April 4, 1995.

W. Christopher Hodge, Knob Noster, for appellant.

Before FENNER, C.J., P.J., and LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

B.C., the natural mother, appeals from an order of the trial court taking jurisdiction over her minor daughter, I.M.B., and placing custody of I.M.B. with the Division of Family Services for actual placement at the Show–Me Christian Youth Home.

In the early morning on December 10, 1993, B.C. entered I.M.B.'s bedroom and discovered I.M.B. lying face up on the bed with her night shirt open, "totally exposed and naked." B.C.'s husband, the natural father of I.M.B., quickly placed his partially erect penis into his jogging pants and stated that things were not as they appeared. B.C. pushed past the natural father to ask I.M.B. what had occurred. I.M.B. initially told B.C. that the natural father touched her and had

sex with her. I.M.B. later stated that actual intercourse had not occurred but that the natural father touched her vagina with his penis.

B.C. took I.M.B. to the hospital for examination and instructed the natural father to turn himself into police authorities. The natural father did so, and all three family members provided voluntary statements to the police.

During the police officer's interview of the father on December 10, 1993, the father admitted, "I made a mistake. I stuck my penis in my daughter." The father was placed in confinement, and at the evidentiary hearing held on March 3, 1994, he denied making this statement.

The handwritten statement of I.M.B. taken on December 10, 1993, stated that her father "took off my underwear & lifted my bra & stuck his penis in my vigina [sic] & then my mom walked in." Two prior instances of fondling were subsequently disclosed during the police officer's interview of I.M.B. In addition, I.M.B. revealed that deep penetration did not occur as there was little pain associated with the father's acts.

Appellant's handwritten statement of December 10, 1993, stated, "I then asked my daughter if he [the natural father] had had sex with her and she replied 'Yes.' My husband then told me it had happened 1 time before and that he knew he needed help and that he would turn himself in to get it."

Criminal charges were filed against the natural father, but these were dismissed on December 29, 1993, for lack of evidence. Apparently, B.C. had recently stated to juvenile officers that she believed intercourse had not occurred as a result of two examinations of I.M.B.: the initial examination was inconclusive due to I.M.B.'s discomfort and non-cooperation during the exam, and the second exam found I.M.B.'s hymen still intact. Contrary to appellant's earlier statements that she fully explained the meaning of "sexual intercourse" to I.M.B. and that I.M.B. knew the meaning thereof, appellant was now claiming that I.M.B. did not know the true meaning when she stated that her father had

intercourse with her. I.M.B. was taken into protective custody on December 29, 1993, due to the juvenile officer's concern that B.C. would not protect I.M.B. upon the father's release as evidenced by B.C.'s changed position regarding the act of intercourse.

The juvenile officer filed a petition for jurisdiction over and disposition of I.M.B. on January 6, 1994. The petition averred that the court had jurisdiction pursuant to § 211.031.1(1)(b), RSMo Supp.1994, in that:

A. On December 10, 1993 at the family residence in Knob Noster, Missouri the biological father, [ ], had sexual intercourse with the said child.

B. In late October of 1993 or early November of 1993 and while at the family residence in Knob Noster, Missouri the biological father, [ ], sexually abused the said child by fondling her breasts.

C. In September of 1993 and while at the family home in Louisville, Kentucky the biological father, [ ], sexually abused the said child by fondling her breasts.

D. On December 10, 1993 the biological mother, [ ], walked into said child's bedroom and found the child lying on her bed wearing no underwear, her bra above her breasts, and her night shirt open. She observed [the biological father] in the same room with the said child, with his penis exposed and erect.

E. Prior to and on December 29, 1993, the biological mother, [ ], was aware that [the biological father] admitted to the Knob Noster Police Department that he had sexual intercourse with the said child.

F. As described in the previously stated paragraphs D & E, the biological mother, [ ], knew or should have known that [the biological father] sexually abused the said child and failed to protect the said child in that she now maintains that:

a) [The biological father] did not have sexual intercourse with the said child.

b) is denying and/or changing statements that she made previously to the Knob Noster Police Department which would implicate [the biological father] in the sexual abuse of said child.

c) Refused to testify against [the biological father] in a criminal proceeding.

d) and is supportive of the father's release from confinement.

An evidentiary hearing was held on March 3, 1994, at which appellant appeared in person and by counsel. After hearing the testimony of appellant, the father, I.M.B., a Knob Noster police officer, and a juvenile officer, and after receiving the voluntary statements of all three family members into evidence without objection, the trial court found the allegations contained in the petition to be true and proven "by the competent evidence presented." The trial court decreed jurisdiction over the juvenile and ordered custody to be placed with the Division of Family Services for actual placement at the Show–Me Christian Youth Home. The court specifically found placement outside the parental home to be in the best interest of the juvenile "because of the on-going sexual abuse committed on the juvenile while in the parental home."

Appellant raises two points on appeal. She first claims the trial court lacked jurisdiction over I.M.B. there being no clear and convincing evidence that appellant knew of the father's abuse or failed to protect the child. Secondly, appellant argues that the order is insufficient because it fails to expressly state that its findings are based on clear and convincing evidence that appellant knew of the abuse or failed to protect I.M.B. from further abuse.

■ The judgment appealed from is reviewed pursuant to Rule 73.01(c) and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence and all reasonable inferences will be considered in the light most favorable to the trial court's order. *In Interest of J.M.P.,* 669 S.W.2d 298 (Mo.App.1984).

■ In a juvenile court hearing, the court first determines if the evidence presented establishes that the child comes under juvenile court jurisdiction. If so, the court proceeds to the dispositional phase and receives evidence regarding the disposition or treatment that should be ordered for the juvenile. *In the Interest of D.D.H.,* 875 S.W.2d 184, 185–86 (Mo.App.1994). Appel-

lant correctly notes that clear and convincing is the standard of proof in a hearing on a petition alleging as a basis for jurisdiction that the child is in need of care and treatment of the juvenile court. Rule 117.05(b); *In the Interest of D.D.H., supra,* at 186.

■ However, the finding of jurisdiction under § 211.031 need not be based on direct evidence. *In the Interest of W.J.D.,* 756 S.W.2d 191, 196 (Mo.App.1988). The trial court functioning as a fact finder may draw all reasonable inferences from the evidence presented and may base its findings upon those reasonable inferences. *Id.* The paramount consideration is the welfare of the child. *C.R.K. v. H.J.K.,* 672 S.W.2d 696, 698 (Mo.App.1984).

■ The petition of the juvenile officer alleged that I.M.B. came within the court's jurisdiction pursuant to § 211.031.1(1)(b) and was in need of protective custody in that appellant now knew of the natural father's sexual abuse of I.M.B. but denied and/or changed her previous statements which would implicate the father in the sexual abuse and refused to testify against the father in a criminal proceeding. The initial court report filed by the social service worker recommended custody of I.M.B. be placed with appellant. However, the social service worker reversed her recommendation in a supplemental court report filed the following day. That report stated:

> Due to the fact that [the natural father] was found in the home, it raises our concerns that [appellant] is ambivalent at least about [the father], the sexual abuse and we question her intent to protect [I.M.B.] It is recommended that [I.M.B.] remain in foster care at this time. I would also recommend that [the father, appellant, and I.M.B.] all receive an evaluation at MOC-SA, and a treatment plan be divised [sic] based on the outcome of those evaluations.

The trial court also had before it the voluntary handwritten statements of I.M.B. and appellant taken on December 10, 1993, and the police report regarding the verbal admission of the father.

At the evidentiary hearing of March 3, 1994, appellant testified that she now believed sexual intercourse did not occur but that she still considered the events to constitute some form of sexual abuse. When asked on direct examination why she did not testify against the father, she replied that no one asked her to testify. Appellant also testified that she would like the family to be united and was uncertain as to her plans for divorce. She further stated that she did not believe additional instances of sexual abuse were likely to be perpetrated by the father.

Appellant asserts her acts of taking I.M.B. to the hospital for examination and instructing the father to turn himself into authorities contradict the claim that she was failing to protect the minor child. However, the juvenile officer had the benefit of personal interviews with appellant and was concerned with appellant's changed position since these acts of protection occurred. Although appellant testified that she would be willing to abide by a court order prohibiting any contact between the father and I.M.B., issues of credibility and weight are within the province of the trial court and will not be disturbed absent a showing that the trial court was clearly wrong. *In re B.G.S.,* 636 S.W.2d 146, 149 (Mo.App.1982).

The trial court's assertion of jurisdiction pursuant to § 211.031.1(1)(b) is affirmed. The evidence is sufficient to meet the clear and convincing standard of Rule 117.05(b). At the hearing, the father admitted enough of the alleged acts of December 10, 1993, to constitute sexual abuse, and appellant testified that the father had been to the home three or four times since his release on December 29, 1993 in order to visit the two younger boys. Appellant further stated that she believed some contact with the father was necessary for the family to reconstruct. Point I is denied.

Having decided that jurisdiction was proper, we now address the sufficiency of the dispositional order placing custody of I.M.B. with the Division of Family Services for actual placement at the Show–Me Christian Youth Home. In Point II appellant claims error because the trial judge failed to expressly state that the evidence was clear and convincing to establish that appellant knew of the abuse or failed to protect I.M.B. from

further abuse. In support of her argument appellant cites *In Interest of W.F.J.*, 648 S.W.2d 210, 216 (Mo.App.1983), a case in which an order terminating parental rights under § 211.447 was deemed insufficient. The error in *W.F.J.* was that neither the petition nor the order articulated which enumerated ground under § 211.447 was deemed to justify termination of parental rights. The instant case involves a temporary order of custody and *W.F.J.* is thus inapplicable.

Rather, the disposition ordered in this matter is governed by §§ 211.181 and 211.183, RSMo Supp.1994, and we find the trial court met the dictates of these sections. Section 211.181 requires the court to decree and make a finding of fact upon which it exercises jurisdiction over the child. Section 211.183 governs the order of disposition and requires the court to include a determination of whether the Division of Family Services has made reasonable efforts to prevent the need for removal of the child. The relevant portions of the instant order provide:

> After presentation of the evidence, the Court finds that the allegations in the Petition filed by the Juvenile Office are true and correct and are proven by the competent evidence presented. The Court finds that it is in the best interests of the juvenile for this Court to take jurisdiction over the juvenile, for custody to be placed with the Division of Family Services, for actual placement at the Show–Me Christian Youth Home, subject to supervision by the Juvenile Office.

> \*   \*   \*   \*   \*   \*

> The Court finds that the Division of Family Services has made every reasonable effort to prevent the need for removal of the juvenile from her parental home, but the Court specifically finds that placement with the Division of Family Services outside the parental home is in the best interests of the juvenile because of the on-going sexual abuse committed on the juvenile while in the parental home.

While the trial court did not expressly state that it found the allegations of the petition to exist by clear and convincing evidence, the court did state that it was satisfied with the competency of the evidence presented. Although we assume the trial court knew and applied the applicable standard of proof in deciding this matter, our independent review also reveals that clear and convincing evidence existed.

The father's admission provides clear and convincing evidence that sexual abuse occurred. Consideration of appellant's assertions that she would prevent contact between I.M.B. and the father were matters well within the province of the trial court on the issue of credibility and weight. *In re B.G.S., supra.* We will not substitute our judgment of witness credibility for that of the trial court, especially in a case such as this where a parent's professed plans are best judged by personal interview.

*In Interest of P.W.*, 670 S.W.2d 563, 567 (Mo.App.1984), recognized that the evidence clearly supported a finding that the grandparents would make excellent custodians of the minor child. However, the court held the trial court did not err in ordering custody of the child to be placed with the Division of Family Services where there was concern that if the child were in custody of the grandparents he would come in contact with mother who abused him. *Id.* Similar concerns exist in the case at bar since the father visited the home on several occasions in order to maintain contact with appellant and the two younger boys. The court is not required to wait until the child is injured. *Id.* We thus affirm the trial court's order of disposition placing custody with the Division of Family Services for actual placement at the Show–Me Christian Youth Home. As with any juvenile proceeding, this determination is subject to reconsideration at a later time. Point II is denied.

Judgment affirmed.

All concur.