In the Interest of K.L.B.

DENT COUNTY JUVENILE OFFICER, Respondent,

v.

C.L.P., Appellant.

No. 19763.

Missouri Court of Appeals, Southern District, Division Two.

May 15, 1995.

Charles T. Rouse, Salem, for appellant.

Lisa Van Steenbergh, Williams, Robinson, Turley & White, P.C., Rolla, for respondent.

GARRISON, Presiding Judge.

Appellant, C.L.P., appeals from a "Finding Of Jurisdiction And Order Of Disposition" entered by the juvenile court on July 21, 1994. By that finding, the court ordered that Appellant's daughter, K.L.B., who was then 10½ months old, be made a temporary ward of the Dent County Juvenile Court and that legal custody be placed with the Dent County, Missouri Division of Family Services (DFS).

At the time of the incidents in question, Appellant was living part time with L.C. who had previously been convicted of DWI 3d, forgery, and assaulting an officer. According to Appellant and L.C., K.L.B. fell from a bed on Monday, June 27, 1994 and injured her head. Ice packs were administered but she was not taken for a medical examination until Wednesday morning, June 29, when Appellant took her to the Salem Memorial Hospital because her eye was black and swollen. A social worker at the hospital testified that K.L.B. had numerous bruises which were in various stages of healing. She described the injuries at that time as a fresh bruise around the eye which was purplish red, older bruises on both big toes, an older bruise under the right eye and on the back of the skull, and a bite mark on the left arm. After seeing the injuries, the social worker called the Missouri State Child Abuse Hot Line.

On the same day (June 29) the hot line call was reported to the DFS. Tonya Nash, a social worker, went to Appellant's home twice that day in an effort to see K.L.B. but was unsuccessful. In response to a note left by Ms. Nash, Appellant took K.L.B. to the DFS office the next morning (Thursday, June 30). At that time, K.L.B. was observed to have a bite on the left wrist, the bruises to both big toes, a scratch on the forehead, a soft spot on the back of the head, a small scabbed circle on the top of the left ear, bruising on the left temple, and a fading purple bruise under the left eye. Appellant explained that the injuries, except the bruised toes which she could not explain, resulted from the fall from the bed which she at first reported as having occurred on Tuesday, June 28.[1]

Ms. Nash admitted that she had no evidence that Appellant administered the injuries but said that because of the appearance of the injuries which indicated different stages of healing, she was skeptical that the fall from the bed could have been responsible for all of them. Appellant indicated she was going to take K.L.B. to the doctor and was encouraged to do so by Ms. Nash. Appellant did take K.L.B. to a doctor's office in Rolla later that morning but the doctor was not in. The nurses, after calling another doctor, told Appellant to watch K.L.B. and take her to the emergency room if her condition worsened.

That evening (Thursday, June 30) Appellant left K.L.B. with L.C. in order to take three of his children to a ball game. She returned a half hour later, found that K.L.B. was apparently doing fine, and returned to

---

1. Tonya Nash testified that Appellant later told her she had reported the fall as occurring on Tuesday, June 28 rather than on Monday, June 27 because a friend suggested that it would look better since she did not seek treatment until Wednesday.

the ball game. Later, Appellant returned to find that K.L.B. was asleep and took the other children for ice cream. At some point she discovered that L.C. had been drinking during her absences. Later that evening, she drove L.C., K.L.B. and two of L.C.'s children to her brother's home. During the trip L.C. placed K.L.B. in the front floorboard of the car. As Appellant got out of the car, she said she heard a "thump." When she asked L.C. about it he responded that it was nothing and not to worry about it. She later noticed, however, that K.L.B.'s eye was beginning to swell again. During the trip back to L.C.'s house, he kept pushing K.L.B. onto the floorboard, saying that he did not want to be stopped for not having her in a child restraint device. Later that evening Appellant noticed that K.L.B.'s eye was beginning to look bad but she said that L.C. refused her request to take them to a hospital in St. Louis.

The next morning (Friday, July 1) Randy Green, a DFS social worker, went to L.C.'s home to check on K.L.B. at the request of Tonya Nash. He found that K.L.B.'s left eye was dark purple and completely swollen shut. According to him, Appellant said that K.L.B. had fallen out of bed on Tuesday, she had noticed the swelling of the eye the previous evening, and she was going to take her to the doctor in Rolla. Later that day Appellant took K.L.B. to the Phelps County Regional Medical Center in Rolla where the child was admitted. At that time, the attending physician indicated a belief that the injuries were inflicted and were new ones. The evidence in the instant case included a photograph taken at the hospital showing injuries to the face and head, including the left eye which was severely bruised and swollen shut.

The Juvenile Court of Phelps County entered an Order of Detention on July 1, 1994 whereby K.L.B. was placed in the custody of the DFS. A petition was filed on July 5, 1994 by the deputy juvenile officer which included allegations that K.L.B. was within

the jurisdiction of the court and was in need of care and treatment pursuant to § 211.031.1(1)(b).[2] The case was then transferred to the Juvenile Court of Dent County (the county where Appellant and K.L.B. lived). On July 21, 1994 a First Amended Petition was filed which alleged the various injuries to K.L.B., that they were consistent with child abuse, and requested that the court make inquiry into the matter. It also alleged that:

> The juvenile is in such condition or surroundings that her welfare requires that her custody be immediately assumed by the Court, for the reasons listed in Paragraph Four,[3] and that further the natural mother, legal custodian, [Appellant], has failed to provide proper care custody or support for said child, [K.L.B.].

A hearing was held on the same day, and as a result the court entered its Finding Of Jurisdiction And Order Of Disposition from which this appeal is taken. It found that jurisdiction of the child had been assumed pursuant to § 211.031.1(1)(b) because she was without proper care, custody and support in that on July 1 she had been taken to the Phelps County Regional Medical Center for treatment of numerous injuries. It also found that the injuries were in different stages of healing; were observed while K.L.B. was in the legal custody of Appellant; Appellant had been advised by the DFS that K.L.B. was being abused; new injuries were observed which were inflicted after Appellant was told of the abuse; and that Appellant had said that the injuries occurred in a fall from a bed, which was disputed, and that Appellant then gave several other reasons for the injuries. The Court proceeded to make K.L.B. a "temporary ward" of the court and placed legal custody of her with the Dent County DFS.

■ Initially, we note that Respondent has filed a motion to dismiss the appeal which was taken with the case for ruling at this

---

**2.** All references to statutes are to RSMo 1994 unless otherwise indicated, and all references to rules are to Missouri Rules of Court (1994).

**3.** Paragraph Four alleged the injuries; the existence of "battered child syndrome"; that the injuries were observed when K.L.B. was in the

custody of Appellant who was advised by the DFS that she was being abused; that new injuries were later observed; and that Appellant gave different causes for the injuries after her original theory of a fall from a bed was disputed.

time. The motion alleges that the Finding Of Jurisdiction And Order Of Disposition is not a final judgment for purposes of appeal in that it does not dispose of all issues, leaving matters to be determined in the future. In this regard, Respondent points out that K.L.B. was made a temporary ward of the court; the DFS was ordered to conduct certain investigative studies; and it provided that the temporary disposition of K.L.B. would continue until further order of the court.

Rule 120.01.b permits a parent to appeal "from any final judgment made under the Juvenile Code which adversely affects him." Although the instant order may be temporary and subject to modification, it implicates the fundamental right of natural parents to rear their own children free of undue governmental interference. *See In Interest of M.D.S.,* 837 S.W.2d 338, 339 (Mo.App. W.D. 1992). The motion is denied.

The first two of Appellant's five points relied on implicate § 211.183. That statute provides:

1. In juvenile court proceedings regarding the removal of a child from his home, the order of disposition shall include a determination of whether the division of family services has made reasonable efforts to prevent or eliminate the need for removal of the child and, after removal, to make it possible for the child to return home. If the first contact with the family occurred during an emergency in which the child could not safely remain at home even with reasonable in-home services, the division shall be deemed to have made reasonable efforts to prevent or eliminate the need for removal.

2. **"Reasonable efforts"** means the exercise of reasonable diligence and care by the division to utilize all available services related to meeting the needs of the juvenile and the family.

3. In support of its determination of whether reasonable efforts have been made, the court shall enter findings, including a brief description of what preventive or reunification efforts were made and why further efforts could or could not have prevented or shortened the separation of the family. The division shall have the burden of demonstrating reasonable efforts.

4. The juvenile court may authorize the removal of the child even if the preventive and reunification efforts of the division have not been reasonable, but further efforts could not permit the child to remain at home.

5. Before a child may be removed from the parent, guardian, or custodian of the child by order of a juvenile court, excluding commitments to the division of youth services, the court shall in its orders:

(1) State whether removal of the child is necessary to protect the child and the reasons therefor;

(2) Describe the services available to the family before removal of the child, including in-home services;

(3) Describe the efforts made to provide those services relevant to the needs of the family before the removal of the child;

(4) State why efforts made to provide family services described did not prevent removal of the child; and

(5) State whether efforts made to prevent removal of the child were reasonable, based upon the needs of the family and child.

Appellant argues that the juvenile court, in ordering the transfer of custody, failed to comply with the statutory mandates by not requiring evidence of, and in not including in its findings determinations concerning, preventive or reunification efforts referred to in § 211.183.1, .3 and .4; in not specifying whether an emergency existed as referred to in § 211.183.1; and in not making the findings specified in § 211.183.5. These contentions find support in several Missouri cases.

In *In Interest of A.L.W.,* 773 S.W.2d 129 (Mo.App. W.D.1989), the juvenile court removed four children from their mother's custody. In the order of disposition, the court found that "reasonable efforts have been made to prevent or eliminate the need for removal of the children from their home." *Id.* at 132. The appellate court held that "[s]uch a determination is made a precondition to any order of disposition which re-

**701**

moved a child from the home in a juvenile court proceeding" by § 211.183.1 but that the order in that case lacked the determination of whether the DFS "made reasonable efforts to avoid the need to remove each child from the home, what the reasonable efforts were, and a detail of the evidence to explain those efforts." *Id.* at 132–133. The court said, with reference to the findings specified in § 211.183.1–.5:

> In each instance the finding must be articulated, and even explained. The determination of *reasonable efforts* must be supported by "a brief description of what preventive or reunification efforts were made and why further efforts could or could not have prevented or shortened the separation of the family" [§ 211.183.3]. The determination to remove the child from the parent must be preceded by a finding that the removal of the child was necessary to protect the child and a detail of the evidence on which that ultimate finding rests. [§ 211.183.5(2), (3) ].

*Id.* at 133. The court explained the reason for such requirements by saying:

> The emphatic direction of § 211.183, that only after reasonable effort to avoid the need for removal of a child from the home may the order for removal issue, expresses the legislative concern for the integrity of the family consonant with the welfare of the child.
>
> ....
>
> The insistence of § 211.183 on a fastidious adjudication of reasonable effort before a juvenile court may remove a child from the home reflects the fundamental right at stake and the seriousness of its infringement.

*Id.* at 134. The court concluded, in setting the order aside and remanding the case to the juvenile court, that not only were the required findings not made, but there was also no evidence of any reasonable efforts to prevent the removal. *Id.* at 135.

In *In Interest of C.K.M.H.*, 829 S.W.2d 674 (Mo.App. W.D.1992), the juvenile court entered an order transferring custody of a child from her mother to the DFS. The mother contended on appeal that the specific findings required by § 211.183 were not made. The appellate court agreed and reversed and remanded the case for specific fact findings required by the statute and for a new judgment, with discretion in the juvenile court to reopen the case for additional evidence. In doing so, the court said:

> In this case, the judge failed to make specific findings of fact as required by § 211.183....
>
> When an order of a court in juvenile proceedings fails to comply with § 211.183, the order is unformulated and is insufficient as a judgment for change of custody.

*Id.* at 676.

In the instant case, Respondent acknowledges that the juvenile court failed to include in its order a determination of whether DFS made reasonable preventive or reunification efforts concerning K.L.B.'s removal under § 211.183.1 or those findings referred to in § 211.183.5. It seeks to excuse that void by arguing that the facts demonstrated an emergency, thereby avoiding the necessity of such findings by reason of the last sentence of § 211.183.1.[4]

In *In Interest of E.S.*, 851 S.W.2d 676 (Mo.App. W.D.1993), the respondent made a similar argument. There the court held that the fact that an emergency may have existed does not relieve the juvenile court from following the remaining requirements of § 211.183 and particularly from making the findings required by § 211.183.5. *Id.* at 681. It held that this is true whether the allegations are of abuse or neglect. *Id.* See also *In Interest of M.D.S.*, 837 S.W.2d at 342.

■ Findings required by § 211.183 must be specific and accompanied by findings of fact rather than conclusory phrases. *In Interest of C.K.M.H.*, 829 S.W.2d at 676. It

4. In the Order of Detention entered on July 1, 1994, the Juvenile Court of Phelps County stated that "[r]easonable efforts are deemed to have been made to prevent removal of the child(ren) from the home because there was no reasonable opportunity to provide preventive services," and that "[c]ontinuation in the home is contrary to the welfare of the child and the community." Respondent does not contend that *this satisfies* the requirements of § 211.183 concerning findings which are required in the order of disposition.

is implicit in the statute that a finding of an emergency requires a finding of not only its existence but why that was found to be so. *See In Interest of A.L.W.*, 773 S.W.2d at 133, n. 1. This is in keeping with the reason for requiring specific findings which is to "assure the trial court has focused upon the facts which must be established as a predicate to the drastic measure of removing the child from the care and custody of the natural parents, and, furthermore, to assure the reviewing court that all such facts have been closely considered." *In Interest of C.K.M.H.*, 829 S.W.2d at 675–676. In the instant case, the juvenile court did not make a finding concerning the existence of an emergency, preventive or reunification efforts, or of the factors referred to in § 211.183.5.[5]

▇▇▇ Section 211.183.1 also requires a determination in the order of disposition about whether the DFS had made reasonable efforts, "after removal, to make it possible for the child to return home." This provision contemplates a return of the child and imposes a duty of reasonable effort by the DFS to that end. *See In Interest of A.L.W.*, 773 S.W.2d at 134. It also contemplates a finding by the court about whether that has occurred. *Id.* Additionally, although § 211.183.4 permits the court to authorize removal of a child in the absence of reasonable preventive or reunification efforts by the DFS, it contemplates a finding that "further efforts could not permit the child to remain at home."

All parties seem to agree in the instant case that there was no evidence indicating that Appellant inflicted any of the injuries to K.L.B. Additionally, there was evidence that she had terminated her relationship with L.C. following K.L.B.'s admission to the hospital. There was, however, no evidence or finding of any effort by the DFS concerning reunification or that further efforts would not

have permitted K.L.B. to remain with Appellant.

Under the circumstances of this case, we are compelled to set aside the juvenile court's order of disposition and remand the cause for specific findings as required by § 211.183. The court upon remand may, in its discretion, reopen the case for additional evidence, including events that have occurred since entry of the order of disposition. We will, however, review Appellant's other points because she contends they would require a reversal.

In her next point, Appellant contends that the juvenile court erred in entering its order of disposition removing K.L.B. from her custody without requiring evidence of the detrimental impact on the child from that action or evidence that the impact of her removal would be less than the harm caused by leaving her in the home. The only authority she cites in support is *In Re I.M.J.*, 428 S.W.2d 18 (Mo.App. S.D.1968), which is not factually similar. In that case, the natural mother was seeking to regain custody of her seven-year-old child who had been out of the mother's custody since it was approximately sixteen months old. The court noted that the lack of evidence concerning the mother's new husband and living conditions would make a change an experiment but remanded the case for further hearings. In doing so, the court demonstrated its concern for the impact on the child which could be caused by taking it from its familiar surroundings. It did not hold that evidence of the comparative psychological effects on the child of leaving it in its existing surroundings as opposed to transferring custody was a precondition to any transfer. The court did note the premise that the paramount issue is the welfare of the child. *Id.* at 23.

▇▇▇ In the instant case there was evidence that K.L.B., who was less than one year old, had been subjected to significant physical abuse. Additionally, the evidence

**5.** Respondent argues that the juvenile court found the allegations of the First Amended Petition to be true and that was sufficient to constitute a finding of an emergency. The Finding Of Jurisdiction And Order Of Disposition, however, recited that "... the Court finds that the allegations of the First Amended Petition have been

established, in that [K.L.B.] is a female child, ten months old and is under the jurisdiction of this Court pursuant to an Order Transferring Proceedings dated July 5, 1994." We do not interpret this as constituting a finding that an emergency existed or setting out the facts upon which that finding was based.

would have permitted a finding that such abuse occurred more than once. The juvenile court may draw reasonable inferences from the evidence presented. *In Interest of D.D.H.*, 875 S.W.2d 184, 186 (Mo.App. S.D. 1994). It also has considerable discretion, after it assumes jurisdiction, in determining the disposition of children. *See C.R.K. v. H.J.K.*, 672 S.W.2d 696, 699 (Mo.App. E.D. 1984). Under the circumstances of the instant case, the court could reasonably have concluded that the comparative harm to K.L.B. at that time was less by entering the order which it did. Additionally, we note that a transfer of custody under § 211.181 is distinguished from a termination of parental rights and is not irreversible. *In Interest of C.L.M.*, 625 S.W.2d 613, 616 (Mo. banc 1981). We conclude that a complete reversal of the juvenile court's judgment on this basis is not warranted.

Appellant also contends, in a separate point, that the court erred in entering its order in that its findings of fact were not supported by clear, convincing and substantial evidence. We see no need to fully explore this point, especially since this cause is being remanded for further findings and, in the juvenile court's discretion, further evidence. Suffice it to say that we find no merit in the point as presented by Appellant.

Finally, Appellant contends that the juvenile court erred in transferring custody of K.L.B. because there was no basis in fact for doing so pursuant to § 211.031.1(1)(b) in that there was no evidence that Appellant caused the injuries or knew that they were inflicted in a willful or intentional way so that she could have prevented them. She also contends that the only possible cause of the injuries was L.C. and the evidence showed that she had long since terminated her relationship with him.

 We interpret this point as being directed at the issue of the juvenile court's jurisdiction. In this regard, it is not necessary that there be evidence that the custodian actually caused injuries to or abused the child before the court has jurisdiction to order a transfer of custody. *See In Interest of E.J.*, 741 S.W.2d 892, 894 (Mo.App. E.D. 1987). Appellant did testify at the hearing

on July 21, 1994 that she had terminated her relationship with L.C. but that had only occurred as of July 1. Even if true, that fact did not prevent the juvenile court from finding, pursuant to § 211.031.1(1)(b), that K.L.B. was without proper care, custody or support.

We also note that the juvenile court, in its comments at the hearing, expressed concern about Appellant's judgment in her relationships and expressed a desire that the case be followed closely by the juvenile officer and DFS and that it be brought before the court again without a lengthy delay. These comments indicate a considered and cautious approach. They also indicate an acknowledgment that the purpose of the law is to preserve the parent-child relationship if possible, considering the fact that the welfare of the child is the paramount concern. Under these circumstances, we are unable to conclude that the juvenile court was without jurisdiction in the instant case.

The order of disposition is set aside and the cause is remanded to the juvenile court for further proceedings consistent with this opinion.

PREWITT, J., concurs.

PARRISH, J., concurs and files separate opinion.

PARRISH, Judge, concurring.

I concur in the result reached in this case with respect to the first two of appellant's five points on appeal. With respect to the remaining three points, I concur in the opinion.

In deciding the first two points on appeal, the principal opinion relies, to a significant extent, on language in opinions in cases decided by the Western District of this court and particularly on *In Interest of A.L.W.*, 773 S.W.2d 129 (Mo.App.1989). I do not read language that now appears in § 211.183, RSMo 1994, as broadly as it was read in *A.L.W.* I question the necessity for concluding, in disposing of the issues in *A.L.W.*, that each finding required by § 211.183.5(1)–(5) must be "even explained." 773 S.W.2d at 133. I believe the statute is explicit with

respect to the findings it requires. In my opinion, the statute requires only that those findings be stated with reasonable particularity. Further explanation of them is not necessary.

My concern is that the principal opinion in this case might be read as adopting the interpretation of requirements of § 211.183.5(1)–(5) that is set forth in *A.L.W.* For that reason, I concur only in the result reached as to appellant's first two points on appeal. I concur, in all other respects, with the remainder of the opinion.