**In the Interest of A.W., Plaintiff.**

**JUVENILE OFFICER, Respondent,**

v.

**S.W.–Natural Mother, Appellant.**

**No. WD 50856.**

Missouri Court of Appeals,
Western District.

Nov. 14, 1995.

Before FENNER, C.J., P.J., BERREY, J., and TURNAGE, Senior Judge.

### ORDER

PER CURIAM.

Appeal from trial court's termination of parental rights.

Judgment affirmed. Rule 84.16(b).

■

**In the Interest of B.R.M., D.D.M., M.A.M., Plaintiffs.**

**JUVENILE OFFICER, Respondent,**

v.

**A.S., Natural Mother, Appellant.**

**No. WD 50399.**

Missouri Court of Appeals,
Western District.

Nov. 21, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 1995.

David Spencer, Kansas City, for appellant.

Lori Stipp, Kansas City, for Juvenile Officer.

William R. Jackson, III, Kansas City, for respondent.

Dale N. Godfrey, Kansas City, Guardian ad Litem, for respondent.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

LAURA DENVIR STITH, Presiding Judge.

The natural mother, A.S., appeals the trial court's termination of her parental rights to her children, D.D.M., M.A.D. and B.R.M.,[1] pursuant to Section 211.447, RSMo Cum. Supp.1993.[2] She does not contest the sufficiency of the evidence to meet the standards set out in that statute. She claims solely that the judgment below is void because the juvenile court never acquired jurisdiction over her children and thus had no subject matter jurisdiction to terminate her parental rights. We find that the juvenile court did have jurisdiction and affirm.

## I. FACTUAL BACKGROUND

D.D.M., born August 30, 1988, B.R.M., born September 18, 1991, and M.A.M., born October 22, 1989, are the children of A.S., the mother, and R.M., the father. In November, 1988, D.D.M. was taken into protective custody by the Juvenile Officer of Jackson County, Missouri when "the home wherein the family resides was observed to be dirty, cluttered, malodorous, infested with insects and strewn with rotten food and soiled clothing." Judgment was entered by the juvenile court in May, 1989, regarding the amended petition filed on behalf of D.D.M. by the Juvenile Officer. This judgment specifically found that "the allegations of the petition were established by clear, cogent and convincing evidence" and that D.D.M.'s removal from her parents' custody was necessary for D.D.M.'s protection. Although D.D.M. was subsequently returned to her parents' custody in October, 1991, the juvenile court never relinquished jurisdiction over her.

In July, 1992, a motion to modify regarding D.D.M.'s custody was filed. Petitions regarding the custody of M.A.M. and B.R.M. were also filed and later amended. The Motion to Modify and Amended Petitions alleged that:

[D.D.M.] and her siblings, [M.A.M.] age two years and [B.R.M.] age seven months, are without proper care, custody and support in that on or about April 24, 1992, [D.D.M.] was hospitalized with a "spiral" fracture of her upper right arm—an injury consistent with physical abuse and for which the children's parents could offer no credible explanation until the children's mother finally admitted that she had been drinking and swinging the child around by her arms.

Further, subsequent to being informed April 27, 1992, that [M.A.M.] and [B.R.M.] would be taken into protective custody, the parents absconded with those children.

---

1. The trial court also terminated the father's parental rights. The father did not appeal.

2. All statutory references are to the Revised Statutes of Missouri, Cum.Supp.1993, unless otherwise noted.

Further, the father has failed to provide proper supervision for the children, including leaving them in the sole custody of the mother although he knew or should have known that she is unable to provide proper care for the children at this time.

The juvenile court entered judgment sustaining the motion to modify and the amended petitions and placed all three children in the care and custody of the Division of Family Services (DFS). The court specifically found that "the evidence adduced sustains the allegations" of the petitions. All three children have remained in the care and custody of DFS.

In September, 1993, petitions to terminate parental rights were filed on behalf of all three children. Pursuant to these petitions, the parental rights of A.S. and R.M. were terminated in October, 1994. In the orders terminating parental rights, the juvenile court expressly stated that it found "by clear, cogent and convincing evidence that [each] child has been under the jurisdiction of the Juvenile Court for a period over one year."

After reviewing the services provided to the parents and children, the efforts made to reunite the family and the status of the children, the juvenile court found that the continuation of the parent-child relationship greatly diminished the children's prospects of early integration into a stable and permanent home. The juvenile court specifically found that the parents had failed to make progress in complying with three social service plans entered into by the parents and DFS; that the failure of the parents to take advantage of the plans and consistently address the problems through counseling resulted in the parent's failure in adjusting their circumstances or conduct to provide a proper home for the children; that the mother suffers from a mental condition, mild retardation and anti-social personality disorder that renders the mother unable to knowingly provide the children with the necessary care, custody and control; and that the mother suffers from alcohol dependence.

The court further found that the children had no emotional ties to the parents, that the parents had not regularly visited the children, that the parents failed to provide financial support for the children, that no additional services would likely bring about an adjustment enabling a return of the children to the parents and that the parents had shown a lack of interest in and lack of commitment to the children.

## II. THE JUVENILE COURT DID AC-QUIRE JURISDICTION OVER THE JUVENILES AND DID HAVE JURISDICTION TO TERMINATE MOTHER'S PARENTAL RIGHTS

The sole issue raised on appeal is whether the juvenile court erred in terminating the parental rights of A.S. ("Mother") because the court lacked jurisdiction over the children. The nature of Mother's argument in support of her position is somewhat procedurally complex and so will be explained in some detail.

### A. Dispositional Order as To Custody of Child.

As Mother recognizes, juvenile court proceedings regarding the removal of a child from the home, and the determination of whether the child shall be placed in foster care or back in the custody of the family, are governed by Section 211.183. Because of its relevance, we quote the statute in full below:

1. In juvenile court proceedings regarding the removal of a child from his home, *the order of disposition shall include a determination of whether the division of family services had made reasonable efforts to prevent or eliminate the need for removal of the child and, after removal, to make it possible for the child to return home.* If the first contact with the family occurred *during an emergency* in which the child could not safely remain at home even with reasonable in-home services, *the division shall be deemed to have made reasonable efforts to prevent or eliminate the need for removal.*

2. **"Reasonable efforts"** means the exercise of reasonable diligence and care by the division to utilize all available services related to meeting the needs of the juvenile and the family.

3. In support of its determination of whether reasonable effort have been made, the court shall enter findings, including a brief description of what preventive or reunification efforts were made and why further efforts could or could not have prevented or shortened the separation of the family. The division shall have the burden of demonstrating reasonable efforts.

4. The juvenile court may authorize the removal of the child even if the preventive and reunification efforts of the division have not been reasonable, but further efforts could not permit the child to remain at home.

5. Before a child may be removed from the parent, guardian, or custodian of the child by order of a juvenile court, excluding commitments to the division of youth services, *the court shall in its orders:*

(1) State whether removal of the child is necessary to protect the child and the reasons therefor;

(2) Describe the services available to the family before removal of the child, including in-home services;

(3) Describe the efforts made to provide those services relevant to the needs of the family before the removal of the child;

(4) State why efforts made to provide family services described did not prevent removal of the child; and

(5) State whether efforts made to prevent removal of the child were reasonable, based upon the needs of the family and child.

§ 211.183 (emphasis added in part).

As is evident, the statute requires that, where the juvenile court orders a child to be removed from the home, the dispositional order "shall include a determination of" whether reasonable efforts were made to avoid removal and to make it possible for the child to return home. § 211.183.1. Mother further recognizes that an exception to this requirement is provided for emergency situations in which the child must be immediately removed from the home to protect the safety of the child. In such situations, "the division shall be deemed to have made reasonable efforts to prevent or eliminate the need for removal." *Id.*

However, as Mother also correctly notes, the finding of an emergency does not eliminate the need for the juvenile court to make a determination as to whether reasonable efforts have been made to reunite the family *as part of its dispositional order.* To the contrary, this Court held, in *In Interest of E.S.,* 851 S.W.2d 676, 681 (Mo.App.1993), that the requirements of Section 211.183.5 that such findings be made must be complied with, at least to the extent applicable, even where jurisdiction was originally obtained due to an emergency.

As recognized in *Dent County Juvenile Officer v. C.L.P.,* 898 S.W.2d 696 (Mo.App. 1995), where the juvenile court fails to make the findings required under Section 211.183.5, the parents may allege on appeal that the order of disposition is invalid because it fails to comply with the statutory requirements. *Id.* at 700–02. Rule 120.01, however, requires that any such appeal be taken within 30 days of the issuance of the dispositional order. *T.S. v. P.S.,* 797 S.W.2d 837, 841 (Mo.App.1990).

In *T.S.,* as here, the mother claimed that the juvenile court's order terminating her parental rights was invalid because the Commissioner's original dispositional order committing the children to foster care and removing them from the home failed to adequately set out the findings required under Section 211.183.5. *Id.* at 840–41. The appellate court found that the mother had failed to preserve her claim for review on at least three grounds: (1) the mother had failed to object to the lack of findings below; (2) the mother had failed to appeal the Commissioner's order to the Circuit Judge as required by Section 211.029 and Rule 120.01; and (3) the mother had failed to appeal the final dispositional order to the Court of Appeals under Rule 120.01. *Id.* at 841–42.

■ Instead, as is the case here, "the mother's appeal was filed *after* the termination [of parental rights] judgment became final." *T.S.,* 797 S.W.2d at 842 (emphasis in original). That was too late to allow her to raise deficiencies in the initial orders governing disposition issued two years earlier.

Rather, as is the case with any final court order, Mother waived any errors in the juvenile court's dispositional order by failing to appeal it within the 30–day period provided under the statute.

### B. *Lack of Subject Matter Jurisdiction.*

■ Mother argues, however, that *T.S.* does not apply, because the juvenile court's failure to make the findings required by Section 211.183.5 in its original dispositional order in the instant case precluded the juvenile court from obtaining subject matter jurisdiction over the children. Therefore, the later order terminating Mother's parental rights was invalid, for the juvenile court had no authority to terminate parental rights as to children over whom it had no jurisdiction.

We agree with Mother that, if the juvenile court lacked subject matter jurisdiction over the children, then she may raise lack of jurisdiction as a defense to the court's later termination of her parental rights, for a court's lack of subject matter jurisdiction may be raised at any time. We clearly held so in *In Interest of E.S.*, 851 S.W.2d 676 (Mo.App.1993).

The parents in *E.S.* also alleged that defects in the juvenile court's dispositional order prevented the juvenile court from acquiring jurisdiction over the children, and thus invalidated the juvenile court's later order terminating the mother's parental rights. *Id.* at 677. The order involved in that case was quite different than the order in the instant case, however.

The order in *E.S.* simply stated that the Juvenile Officer made various allegations of abuse and neglect which subjected the child to the court's jurisdiction under Sections 211.110 and 211.031. *Id.* at 679. Therefore the Court ordered the juvenile to be placed in the custody of Division of Family Services. Nowhere in the order did the juvenile court find that the Juvenile Officer's allegations were true and supported the court's exercise of jurisdiction over the juvenile under Sections 211.110 or 211.031. *E.S.* properly found that, in the absence of such a finding, the juvenile court had never actually acquired jurisdiction over the juvenile. *Id.* at 679–81.

*E.S.* also noted that the juvenile court had failed to make the findings required by Section 211.183.5 in its dispositional order. *Id.* at 680. We do not, however, read the opinion as holding that this failure was a jurisdictional defect which deprived the juvenile court of subject matter jurisdiction to later declare the termination of parental rights as now argued by Mother. Her argument to the contrary appears to be based on her failure to distinguish between the *jurisdiction* of the juvenile court over the child under Section 211.031 and the propriety of the *dispositional* order ultimately issued by the juvenile court under Section 211.183, once it obtains such jurisdiction.

Section 211.183 has been set out above. Section 211.031 states, in relevant part, that the juvenile court has exclusive original jurisdiction in proceedings:

> (1) Involving any child or person seventeen years of age who may be a resident of or found within the county and who is alleged to be in need of care and treatment because:
>
> > (a) The parents, ... neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his well-being; ...; [or]
> >
> > (b) The child or person seventeen years of age is otherwise without proper care, custody or support; ....

§ 211.031.1(1)(a)–(b).

In other words, Section 211.031 governs jurisdiction over the child. Failure to issue findings sufficient to satisfy that section means the juvenile court has failed to obtain jurisdiction over the child, and unless the court acquires jurisdiction by a later order, it has no authority to terminate parental rights. *E.S.*, 851 S.W.2d at 680–82.

By contrast, Section 211.183 merely sets out the requirements for issuance of a dispositional order, once jurisdiction has been obtained. Failure to comply with its requirements does not deprive the juvenile court of jurisdiction, although it is a defect which may be raised in a timely appeal.

■ Here, as in *T.S.*, the relevant orders of the juvenile court in which it asserted

*original* jurisdiction over the juveniles specifically did contain the juvenile court's findings that the allegations of the Petitions were in fact true and that the juveniles were in need of care and treatment.[3] Even assuming that the orders did not go on to discuss the factors set out in Section 211.183.5 in sufficient detail to satisfy the statute,[4] it was up to Mother to appeal and raise this deficiency in the dispositional order within the time permitted by Section 211.261. Had she done so, this Court would have the authority to review the orders to see if they complied with Section 211.183.5 and, if not, to remand for further findings, as we recently did in *Juvenile Officer v. B.C.*, 897 S.W.2d 146, 149–50 (Mo.App.1995).

Here, however, the Mother failed to timely appeal any lack of specificity in the dispositional order, and hence waived any defects in that order. She cannot now rely on any such defects, years after they occurred, in order to attack the jurisdiction of the juvenile court to terminate her parental rights.

The juvenile court properly acquired jurisdiction over the children under Section 211.031 and properly terminated parental rights under Section 211.447. For these reasons, the decision of the juvenile court terminating appellant's parental rights is affirmed.

All concur.

---

3. For example, the 1989 order finding D.D.M. subject to the jurisdiction of the juvenile court stated that the allegations of the Petition alleging abuse and neglect "were established by clear, cogent and convincing evidence and, therefore, removal is necessary for the protection of the child." The court never gave up jurisdiction over D.D.M. after that point. Similarly, the 1992 orders taking custody of all three juveniles also specifically found that the allegations of the Petition alleging abuse and neglect were sustained and that it had jurisdiction over the juveniles and found the juveniles in need of care and treatment.

4. While we do not reach this issue, we do note that each order did discuss what services either had been or would be made available to the parents, and the reasons for removal, to at least some extent. In the original order finding jurisdiction over D.D.M., an order which Mother inexplicably failed to include in the Legal File, the juvenile court found that removal of the child was necessary for the protection of the child in that the allegations of the Petition proved that the parents' home had been filthy and they now had no home and that the efforts made to prevent removal were reasonable as the parents had no means of providing care for the child at the time, and that certain services would be provided to the parents. The later orders regarding D.D.M. as well as the other two children note the services which should be provided and the emergency basis of the particular removal. The final order terminating parental rights went into great detail as to the services which had been provided, why they were not successful, and why termination was deemed proper.