**STATE of Missouri, Respondent,**

v.

**Winston BELL, Appellant.**

**No. 79186.**

Supreme Court of Missouri,
En Banc.

Aug. 19, 1997.

Craig Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cassandra Dolgin, Assistant Attorney General, Jefferson City, for Respondent.

WHITE, Judge.

Winston Bell was convicted of the first degree murder of his wife, Fay Allen, and sentenced to death. Several witnesses testified at trial that Ms. Allen told them of numerous previous incidents of abuse by her husband. This hearsay evidence was erroneously admitted and prejudiced Mr. Bell's defense. We reverse and remand for a new trial.

On June 3, 1994, Ms. Allen called 911, asking for help and saying that her husband had set her on fire. When police and paramedics arrived, Ms. Allen was alert and told them that Mr. Bell had thrown gasoline on her and set her on fire. She suffered second and third degree burns over ninety-one percent of her body and, two weeks later, died

from her injuries. At trial, Mr. Bell claimed that his wife had attacked him with a cleaver and that, after he disarmed her, she tried to pour gasoline on him. When he struggled with her, he testified, she spilled gasoline on both of them, which she ignited with a cigarette lighter. He claimed that he put himself out and then attempted to extinguish Ms. Allen by pouring water on her, taking off her clothes, and putting her in the shower. He then left the house because, he claimed, Ms. Allen was still angry with him.

The State presented forensic evidence to attack Mr. Bell's version of events, including evidence showing: that there had been no struggle over the gas can; that Ms. Allen was doused in the living room and hallway, not in the kitchen, where Mr. Bell said the altercation occurred; that Ms. Allen—not Mr. Bell—had extinguished the fire by getting into the shower and removing her own clothes; and that Mr. Bell's clothing showed little or no evidence of having been soaked with gasoline or ignited.

### Hearsay Evidence of Prior Assaults

The State also sought to challenge Mr. Bell's version of events by introducing testimony that Ms. Allen had said that Mr. Bell had previously assaulted her. A co-worker of Ms. Allen's, Annette Smith, testified that Ms. Allen had often come to work showing signs of having been injured. Ms. Smith testified that she had seen Ms. Allen come to work with a split lip, with a black eye on three or four occasions, and once on crutches. Ms. Smith testified that when she asked Ms. Allen how she got these injuries, Ms. Allen initially said that she had fought with her cousin or had fallen, but that when Ms. Smith challenged her, she eventually said that Mr. Bell was responsible for the injuries. The State further offered the testimony of a po-

lice officer, Tommy Brown, who responded to a police call from Ms. Allen in March of 1994. He testified that Ms. Allen appeared to have been assaulted—she had abrasions on her face—and appeared frightened. He also testified that Ms. Allen told him that she and Mr. Bell had argued, that he had become enraged and had beaten her for more than an hour, and had tried to break her leg by twisting it. Another officer, Darren Burkette, testified that Ms. Allen had told him substantially the same facts.

■■■ The State argues that the testimony concerning Ms. Allen's statements accusing Mr. Bell of prior abuse are admissible hearsay under the "declarant's present state of mind exception" to the hearsay rule. Generally, "statements of a declarant's present mental condition made out of court are excepted from the hearsay ban" and are admissible "in limited situations when they are relevant and the relevancy outweighs their prejudicial effect." [1] In *Boliek*, for instance, this Court held that admission of a statement by a murder victim that she was afraid the accused was going to kill her was not an abuse of discretion.[2] Often, statements of fear are accompanied by recitals of facts explaining the state of mind.[3] In such cases, factual assertions are admitted solely to show state of mind, and care must be taken to ensure that accompanying factual matter is not taken as evidence of the truth of the matter asserted.[4] Because of the danger that such evidence might be considered for an improper purpose, its use is generally limited to cases where hearsay declarations of mental condition are especially relevant—particularly where the defendant has put the decedent's mental state at issue by claiming accident, self-defense or suicide.[5]

---

1. *State v. Boliek*, 706 S.W.2d 847, 850 (Mo. banc 1986).

2. *Id.*

3. *See State v. Ford*, 639 S.W.2d 573, 575 (Mo. banc 1982) (admitting testimony that murder victim said accused had harassed her and that she was afraid he might come to her house and become violent); *State v. Pagano*, 882 S.W.2d 326, 336 (Mo.App.1994) (admitting testimony that murder victim said that accused had threat-

ened to kill him and that he feared accused); *State v. Singh*, 586 S.W.2d 410, 417 (Mo.App. 1979) (admitting testimony that murder victim said she was afraid of the accused, afraid of guns, and had heard that defendant had a gun).

4. *Singh*, 586 S.W.2d at 418.

5. *State v. Randolph*, 698 S.W.2d 535, 539 (Mo. App.1985); *Singh*, 586 S.W.2d at 418.

The testimony in this case, however, whether it was more probative than prejudicial, does not fit within the exception because it is not a contemporaneous statement of fear, emotion, or any other mental condition. The testimony adduced at trial was that Ms. Allen said that Mr. Bell had beaten her on numerous occasions; no evidence was presented that Ms. Allen stated her current thoughts, feelings, or intentions to any of the witnesses. Courts have found that hearsay statements which do no more than recount past events, especially past acts by one not the declarant, are not proper subjects for this exception.

In the leading case in this area, *Shepard v. United States*, the United States Supreme Court wrote that "[d]eclarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored." [6] Thus, the Court held testimony that the deceased said that the accused had poisoned her, although it negated the claim that she was suicidal, was inadmissible because "it spoke to a past act, and even more than that, to an act by some one not the speaker." [7] Missouri courts have consistently followed that logic and barred mere "narration of past events." [8] This Court has held that "[t]he underlying, essential characteristic of all the numerous cases admitting such evidence is that the statement must refer to the intention, design or state of mind of the declarant. Those parts of the statement referring to the acts and intentions past and present, of the defendants were pure hearsay as to them ... and are not within the exception...." [9] The hearsay testimony that Ms. Allen said Mr. Bell had previously abused her was not a declaration of her state of mind and was pure narration of past acts by another. Accordingly, it was inadmissible hearsay,

and the trial court abused its discretion by allowing it to be presented to the jury.

### Prejudice

■ Where a trial court has abused its discretion, reversal is required when that error has prejudiced the defendant, that is, where "there is a reasonable probability that, in the absence of the abuse, the verdict would have been different." [10] Mr. Bell was prejudiced by this evidence. His mental state at the time Ms. Allen was set on fire was essentially the only contested issue in the case. Though Mr. Bell claimed in his testimony that he did not intend to set Ms. Allen on fire, most of defense counsel's efforts were directed towards highlighting the scarcity of evidence that Mr. Bell intended to kill Ms. Allen and that he deliberated before lighting her on fire. At one point, his counsel even argued to the jury: "Ladies and gentlemen, we're not saying he's not guilty of anything at all. But what we're saying to you is that he's not guilty of murder in the first degree. And nothing you look at proves to you beyond a reasonable doubt that he deliberated and engaged in cool reflection in the burning...." To combat this argument, the State repeatedly referred to the previous incidents of abuse as evidence of intent: "Think about his intent on all those other times he beat her up." And later: "What he did to her was as intentional an act on June 3rd as what he did to her when he beat her—when he beat her for money reasons, when he beat her she was talking and he told her not to, when she had those fat lips and black eyes. It's the same intentional act. This was no accident, the way it was intentional before. It was intentional on June 3rd."

Without the hearsay testimony of Ms. Smith, Officer Brown, and Officer Burkette, the evidence of previous violence by Mr. Bell against Ms. Allen was far less suggestive of an intent to kill. The State presented the

**6.** 290 U.S. 96, 105–06, 54 S.Ct. 22, 26, 78 L.Ed. 196 (1933).

**7.** *Id.* at 106, 54 S.Ct. at 26.

**8.** *State v. Benson,* 346 Mo. 497, 142 S.W.2d 52, 54 (1940); *Randolph,* 698 S.W.2d at 539; *State v. Miller,* 664 S.W.2d 229, 231 (Mo.App.1983).

**9.** *Benson,* 142 S.W.2d at 54.

**10.** *State v. Barton,* 936 S.W.2d 781, 786 (Mo. banc 1996).

non-hearsay testimony of Verna Lewis, another co-worker of Ms. Allen's, that she had seen Mr. Bell strike Ms. Allen twice while she was at work, and Mr. Bell's own admission that he had hit Ms. Allen in the face on two occasions. The hearsay testimony greatly increased the number of times Mr. Bell was alleged to have beaten Ms. Allen, and the severity of the reported abuse was far greater: Ms. Smith testified that Ms. Allen said that Mr. Bell had beaten her with an iron pipe; Officer Brown said that she said Mr. Bell tried to break her leg by twisting it; Officer Burkette said that Ms. Allen reported being struck repeatedly with a closed fist. This hearsay testimony was used by the prosecution to argue that Mr. Bell's previous violence towards Ms. Allen showed that he intended to kill her on this occasion. Given the much greater frequency and severity of beatings proven by inadmissible evidence as compared with those revealed by competent evidence, there is a reasonable probability that the outcome of the trial would have been different had this hearsay been excluded.

The judgment is reversed and the cause remanded for a new trial.

All concur.

LIMBAUGH, J., concurs in separate opinion filed.

PRICE, ROBERTSON and HOLSTEIN, JJ., concur in opinion of LIMBAUGH, J.

LIMBAUGH, Judge, concurring.

The conviction of Winston Bell for the gruesome murder of his wife, for burning her alive, is overturned because of the Court's strict adherence to the rule of evidence that excludes hearsay testimony. Justice has not been served. The hearsay evidence admitted at trial, although technically inadmissible even under the state-of-mind exception, was nevertheless probative and trustworthy. The federal courts and the courts of twenty-nine of our sister states have now relieved the harshness of the hearsay rule by implementing a residual or omnibus exception that may be invoked, in general, when no other exception applies and when the evidence in question is shown to be trustworthy.[1] The time has come for Missouri to adopt such a rule as well.

I.

The residual hearsay exception contained in Rule 803(24) of the Federal Rules of Evidence, which is the model for nearly all of the state exceptions, allows admission of the following type of hearsay:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reason-

1. The federal hearsay residual exception is set out in Fed. R. Evid. 803(24).

The states that have codified a residual hearsay exception include Alaska, Alaska R. Evid. 803(24); Arizona, Ariz. R. 803(24); Arkansas, Ark. Rev. R. 803(24); Colorado, Colo. R. Evid. 803(24); Delaware, Del. Unif. R. Evid. 803(24); Hawaii, Haw. R. Evid. 803(b)(24); Idaho, Idaho R. Evid. 803(24); Iowa, Iowa R. Evid. 803(24); Maryland, Md. R. Evid. 803(24); Michigan, Mich. R. Evid. 803(24); Minnesota, Minn. R. Evid. 803(24); Mississippi, Miss. R. Evid. 803(24); Montana, Mont. R. Evid. 803(24); Nebraska, Neb. Rev. Stat. § 27–803(22)(1995); Nevada, Nev. Rev. Stat. 51.315 (1995); New Hampshire, N.H. R. 803(24); New Mexico, N.M. R. 11–803(x); North Carolina, N.C. R. 803(24); North Dakota, N.D. R. 803(25); Oklahoma, Okla. Stat. Ann. tit. 12, § 2803(24)(West 1993); Oregon, Or. Evid. Code R. 803(26); Rhode Island, R.I. R. Evid. 803(24); South Dakota, S.D. R.

Evid. 803(26); Utah, Utah R. Evid. 803(24); West Virginia, W.Va. R. Evid. 803(24); Wisconsin, Wis. Stat. Ann. § 908.03(24)(West 1993); Wyoming, Wyo R. Evid. 803(24).

Other states that appear to have adopted the residual hearsay exception in case law include Connecticut, *State v. Sharpe*, 195 Conn. 651, 491 A.2d 345, 353–54 (1985); *State v. Stepney*, 191 Conn. 233, 464 A.2d 758 (1983); and Georgia, *Higgs v. State*, 256 Ga. 606, 351 S.E.2d 448, 450 (1987); *Chrysler Motors Corp. v. Davis*, 226 Ga. 221, 173 S.E.2d 691 (1970). These states are in addition to those states that may have adopted the residual hearsay exception by case law prior to statutory enactment.

The states that have no residual hearsay exception include Alabama, California, Florida, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Missouri, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, Vermont, and Washington.

able efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed R. Evid. 803(24).

Analysis under the residual hearsay exception in both federal and state jurisdictions focuses on two primary elements: (1) the necessity of admitting otherwise inadmissible hearsay, and (2) the factors which support the reliability and trustworthiness of such hearsay. 2 MCCORMICK ON EVIDENCE sec. 324, at 362–66 (John W. Strong ed., 4th ed. 1992); 31A C.J.S. *Evidence* sec. 264 (1996); *see also State v. Sharpe*, 195 Conn. 651, 491 A.2d 345, 353–54 (1985). The necessity prong requires that the hearsay pertain to a material fact and that evidence of similar probative value cannot be otherwise obtained by the proponent. 2 MCCORMICK ON EVIDENCE, *supra*, sec. 324, at 365–66; 31A C.J.S. *Evidence* sec. 264; *see also Noble v. Alabama Dept. of Envtl. Management*, 872 F.2d 361, 366 (11th Cir. 1989); *United States v. Iaconetti*, 406 F.Supp. 554, 559 (E.D.N.Y. 1976). The trustworthiness prong focuses on various factors that tend to support the reliability and trustworthiness of hearsay. 2 MCCORMICK ON EVIDENCE, *supra*, sec. 324, at 362–65; 29 AM.JUR.2D, *Evidence* sec. 685 (1994); *see also F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993); *United States v. Woolbright*, 831 F.2d 1390, 1396–97 (8th Cir. 1987). Examples of such factors include the motivation for speaking truthfully, the timing of the statement, the basis of the declarant's knowledge, the spontaneity of the statement, and the circumstances surrounding the statement. 2 MCCORMICK ON EVIDENCE, *supra*, sec. 324, at 363–65; 29 AM.JUR.2D, *Evidence* sec. 685; *see also Cook v. Hoppin*, 783 F.2d 684, 690–91 (7th Cir. 1986).

The residual hearsay exception acknowledges the inherent limitations of the several traditional and conventional hearsay exceptions by providing courts with the flexibility necessary to address hearsay which does not fit those specific exceptions. Fed. R. Evid. 803(24) advisory committee's note; 31A C.J.S. *Evidence* sec. 264; *see also Nowell v. Universal Elec. Co.*, 792 F.2d 1310, 1314 (5th Cir. 1986). Specific hearsay exceptions accommodate specific circumstances where evidence is likely to be trustworthy even though that evidence is hearsay. Because specific hearsay exceptions cannot anticipate all circumstances that would indicate trustworthiness, a residual hearsay exception allows courts to consider other circumstances which may also provide an equivalent inference of trustworthiness. Fed. R. Evid. 803(24) advisory committee's note.

Like all other jurisdictions, Missouri grounds its hearsay exceptions in trustworthiness. In *Bynote v. National Super Markets, Inc.*, 891 S.W.2d 117, 120 (Mo. banc 1995), this Court explained that "exceptions to the general prohibition against hearsay may apply when circumstances conspire to assure the trustworthiness of the declarant's statement despite the absence of cross-examination, the oath, and the fact finder's ability to observe the declarant's demeanor." Although Missouri has not formally recognized a residual hearsay exception, the Court of Appeals has on occasion admitted typical hearsay evidence for which no exception applies when it had a "circumstantial probability of trustworthiness." *Moore v. Dir. of Revenue*, 811 S.W.2d 848, 852 (Mo.App. 1991)(admitting hearsay evidence of information on packaging label), *cited with approval in State v. Parker*, 817 S.W.2d 920, 921 (Mo. App. 1991). Particularly in child abuse cases, Missouri courts have been willing to admit a child's statements even though they would be hearsay. *See, e.g., K.J.B. v. C.A.B.*, 883 S.W.2d 117, 120 (Mo.App. 1994); *D.L.H. v. H.T.H.*, 780 S.W.2d 104, 105 (Mo.App. 1989); *Hord v. Morgan*, 769 S.W.2d 443, 447 (Mo.App. 1989); *In the Interest of W.J.D.*, 756 S.W.2d 191, 196 (Mo.App. 1988); *In Interest of S.M.*, 750 S.W.2d 650, 653–55 (Mo. App. 1988); *In re Marriage of P.K.A.*, 725 S.W.2d 78, 80–81 (Mo.App. 1987); *see also* Mo. Evidence Restated, sec. 803(24)(MoBar 3d ed. 1996). All in all, recognition of a residual hearsay exception based on trustworthiness would be consistent with the underlying purpose of Missouri's traditional and conventional hearsay exceptions. As such, it is a reasonable solution for the problem our courts so often face in finding an

exception for trustworthy hearsay evidence when no exception applies.

## II.

Application of a residual hearsay exception to the case at hand appears to compel a different result. The materiality and probative value of the evidence of Bell's prior assaults on the victim can hardly be denied. Indeed, under the prejudice analysis in the principal opinion, the probative value of the evidence of Bell's prior assaults won the day for the State by convincingly undercutting Bell's perverse defense that his wife's death was due to accident.

More importantly, a number of factors exist that support the reliability and trustworthiness of the hearsay statements. The victim's coworker testified that she had seen the victim come to work "with a split lip, with a black eye on three or four occasions, and once on crutches," and that although the victim had told her at first that she had fought with a cousin, or had fallen, she finally conceded that in fact "Mr. Bell was responsible for the injuries." Two police officers also testified that in responding to a call from the victim, "she appeared to have been assaulted—she had abrasions on her face—and appeared frightened," and she told them that Bell had beaten her for more than an hour and had tried to break her leg by twisting it. I can perceive of no motivation for the victim to speak untruthfully about these matters. Her statements to the police were made spontaneously at a time when she had just been beaten and was still frightened by her predicament. The statements to the coworker were made at a time when, because of the repeated incidents, the victim's original explanations became increasingly untenable and truth was her only recourse. In short, the testimony about Mr. Bell's prior assaults of the victim met all the requirements of the residual hearsay exception, and had the trial court the benefit of the exception, the evidence would have properly been admitted.

## III.

Despite these conclusions, I would hesitate to invoke the residual hearsay exception *sua sponte.* Application of the residual exception and the determinations of materiality, probative value, reliability, and trustworthiness are to be made, in the first instance, by the trial court, and furthermore, admission of hearsay evidence under the residual exception "is within the discretion of the trial court, which should conduct a searching review of the facts before determining the applicability of the exception." 29 Am Jur. 2d, *Evidence* sec. 702, at 755. In this case, the State understandably made no effort to admit the hearsay evidence under an as-yet unrecognized hearsay exception. Consequently, the trial court did not undertake that "searching review" or make any of the determinations necessary for application of the residual exception. Even had it done so, this Court has not been favored with briefing and argument on the issue.

Because these conditions have not been met, and because I agree that it was error to stretch the state-of-mind exception to accommodate hearsay evidence that simply does not fit that exception, I concur in the principal opinion.