STATE of Missouri, Respondent,

v.

Winston BELL, Appellant.

Winston Bell, Appellant,

v.

State of Missouri, Respondent.

Nos. ED 75683, ED 80029.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 23, 2002.

Jennifer S. Walsh, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Winston Bell–Bey ("movant") appeals the judgment of the motion court denying his motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 on the merits after an evidentiary hearing. In his motion, movant claims he was denied effective assistance of counsel because his trial counsel opened the door to hearsay evidence that movant previously abused his wife, Fay Allen ("victim"). Movant also filed a motion to recall the mandate concerning the direct appeal of his conviction, which was consolidated with this appeal.[1] In this motion, movant asks the court to recall the mandate issued in *Bell II*. We affirm the judgment of the motion court and deny the motion to recall mandate.

On June 3, 1994, a 911 emergency call was received from victim requesting help and stating that movant had set her on fire. Police and paramedics arrived at victim's home and determined that victim was alert and oriented. Victim told them that movant had poured gasoline on her and set her on fire. She suffered second and third degree burns over ninety-one

percent of her body and died two weeks later from resulting complications. Movant was charged with one count of murder in the first degree and one count of armed criminal action. His first jury trial resulted in a conviction on both counts. When the jury could not reach a verdict on punishment, the trial court sentenced movant to death for the first-degree murder count and seventy-five years for armed criminal action. The Missouri Supreme Court reversed the conviction based upon the admission of victim's statements to others regarding prior abuse by movant. In *Bell I*, the Supreme Court held these statements inadmissible under the state-of-mind exception to the hearsay rule. *State v. Bell*, 950 S.W.2d 482 (Mo. banc 1997). The case was remanded to the trial court and retried. Prior to the second trial, a hearing was held concerning the exclusion of any hearsay statements victim made to others. The trial court determined that certain hearsay statements made by victim to others were admissible. Specifically, statements made by victim to a co-worker, Annette Smith ("Smith") were admissible under the residual hearsay exception. The court found that the statements evidenced movant's intent, and they were reliable and trustworthy. In the second trial, Smith testified about her observation of injuries to victim and conversations she had with victim concerning acts of abuse by movant. Movant was again convicted of first-degree murder and armed criminal action, and was sentenced to life imprisonment without parole. Movant appealed his convictions based upon the alleged error of the trial court in admitting Smith's hear-

---

1. Movant was previously convicted of first-degree murder and armed criminal action. The defendant was sentenced to death. The Missouri Supreme Court reversed the convictions from movant's first trial based upon the admission of hearsay statements of victim to others concerning prior abuse by movant.

*State v. Bell*, 950 S.W.2d 482 (Mo. banc 1997) ("*Bell I*"). On retrial, movant was again convicted of first-degree murder and sentenced to life imprisonment without probation or parole which this court affirmed. *State v. Bell*, 14 S.W.3d 67 (Mo.App.1999) (*Bell II*).

say testimony regarding movant's prior abuse of victim. In *Bell II,* this court cited portions of the trial transcript of Smith's direct examination by the state. Specifically, the court noted that the relevant portion of the transcript included the following testimony elicited by the prosecutor:

Q. During that time when you were driving [victim] to work, did you ever observe any injuries to her?

A. Yes.

Q. And could you tell the jury what those injuries were in regard to her face?

A. She had some black eyes. She came in with a busted lip.

Q. The first time you saw [victim] with a black eye, did you ask her how she got that black eye?

A. Yes.

Q. And what did she initially tell you?

A. She told me that her cousin done it.

Q. Was this cousin a male or female according to [victim]?

A. A female.

Q. Did you believe her when she told you that?

A. No, I didn't.

Q. And did you continue to question her about that?

A. Yes, I did.

       \*     \*     \*

Q. What did [victim] tell you?

A. Her cousin done it.

Q. What was the nickname she used for her cousin?

A. June.

       \*     \*     \*

Q. Can you tell the manner which [victim] told you what her demeanor was like when she was telling you how she got the black eye from June?

A. The second black eye and busted lip she told me June had done it. She was in a down spirit.

The court also noted the following relevant testimony which was elicited on cross-examination by movant's trial counsel during the second trial:

Q. Now when—excuse me—when [victim] told you initially that her cousin and she had gotten into a fight, you didn't believe her, right?

A. No, I didn't.

Q. You, yourself, are a victim of domestic abuse, aren't you?

A. Yes, I am.

Q. You have strong feelings about domestic violence don't you?

A. What do you mean strong feelings?

Q. You feel strongly—you have strong personal feelings about it, don't you?

A. No.

Q. Because of that incident you don't?

A. No.

Q. Well you felt strongly enough at that time to press [victim], because you thought she wasn't telling the truth, right?

A. Yes.

Q. Because you believe it was domestic abuse?

A. Yes.

Q. And during that time period of time, how many days past [sic] before [victim] told you that [movant] had done it the first time?

A. It was the second time she came in with a black eye.

Q. Which was a few weeks later?

A. Yes.

Q. And during that time, you pressed her continuously?

A. Yes.

Q. You kept going over and over at her every day, tell me what happened, tell me what happened?

A. Not every day, but I asked her.

Q. Over that course of a two week period, you continued to press her over and over again, didn't you?

A. I asked her.

Q. Sometimes more than once a day?

A. I wasn't counting the times I asked her.

Q. Weren't there days you asked more than one time?

A. I can't remember.

Q. All right, but you pressed her. You asked her over that two week period?

A. I asked her, yes.

Q. During that two week period, she never changed what she said. She continued to say that it was her cousin and her that got into a fight, right?

A. Yes.

Q. Then the second time that you saw her with a black eye, she again said it was her cousin. She said her had gotten into a fight two times, didn't she?

A. Yes.

\*     \*     \*

Q. Now when [victim] told you that [movant]—when [victim] told you that her cousin did it, you knew she had a female cousin, didn't you?

A. Yes.

Q. [Victim] had told you about it, right?

A. No.

Q. She never told you about any of her female cousins?

A. No.

Q. So you told her she was lying, didn't you?

A. Yes I did.

Q. And after she told you that it was [movant] that did it, you stopped telling her she was lying, didn't you?

A. Yes, I did.

Q. Because at that point, you believed that she was telling the truth?

A. Yes.

Q. And when she told you that [movant] did it, you guys didn't discuss what circumstances led up to the incident, did you?

A. I don't remember.

Q. She didn't tell you what happened that caused the incident?

A. I don't remember what details it was.

Q. She didn't tell you that. She didn't tell you what the reason was, or if she hit [movant] back, or if they were in the fight with each other, none of that?

A. I don't remember that.

Q. All she said when you continued to press her, she said [movant] did it?

A. She said June did it.

Q. You knew that to be [movant]?

A. Yes.

This court noted in its memorandum opinion in *Bell II* that, based upon the transcript, defense counsel, not the state, introduced testimony from Smith that movant caused victim's prior injuries. Therefore, the court determined that movant was not entitled to complain about matters introduced by his own questions and affirmed the convictions.

After movant's sentences were affirmed, he filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Counsel was appointed on movant's

behalf and an amended motion was filed. Movant alleged that trial counsel was ineffective because he opened the door to hearsay evidence that movant previously abused victim. An evidentiary hearing was conducted on May 24, 2001. At the hearing both movant's trial counsel and the trial prosecutor testified that the trial transcript was incorrect concerning Smith's testimony. Both counsel stated that on direct examination Smith testified that the victim initially blamed her cousin for the injuries but later said that movant abused her. Specifically, counsel both testified that Smith said, "[h]er husband done it," rather than, "[h]er cousin done it." Additionally, counsel testified that Smith stated that June was victim's nickname for her husband, not her cousin.

Movant's trial counsel testified that his strategy was to attempt to discredit Smith's testimony concerning the prior abuse to victim. Counsel's strategy was to argue that Smith's testimony was unreliable because she initially said the victim identified her cousin as the assailant and only after repeated questioning by Smith did victim state that movant had abused her. According to movant's trial counsel, if Smith had testified as recorded in the transcript, he would not have questioned her the way he did on cross-examination. Additionally, the prosecuting attorney testified at the hearing that she would not have concluded her direct examination of Smith without having established that movant abused victim. The motion court issued findings of fact and conclusions of law on July 17, 2001, denying movant's request for post-conviction relief. The motion court specifically found that the testimony of both movant's trial counsel and trial prosecutor was credible and was supported by circumstantial evidence, and the trial transcript was incorrect. The court determined that Smith testified that victim told her movant had abused her for the

first time on direct examination by the prosecutor. As a result, the motion court found that defense counsel was "not ineffective in his cross-examination of Ms. Smith, because the State had, through Ms. Smith, established that the victim ultimately identified her husband as the source of these injuries, and accordingly defense counsel was not the first to raise this fact before the jury."

Our review of the denial of post-conviction relief by a motion court is limited only to a determination of whether the findings and conclusions issued by the motion court are "clearly erroneous." *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996), *cert denied*, 519 U.S. 1152, 117 S.Ct. 1088, 137 L.Ed.2d 222 (1997). Findings of fact and conclusions of law are considered "clearly erroneous" if after a review of the entire record the court is left with the definite and firm impression that a mistake has been made. *Id.*

In his sole point addressing the denial of post-conviction relief, movant alleges that should this court determine that the trial transcript presented on direct appeal was correct, the motion court clearly erred in denying movant's request for relief based upon ineffective assistance of trial counsel. Should the court decide that the transcript was accurately transcribed, movant asserts that trial counsel was ineffective for "opening the door" to hearsay evidence of movant's prior abuse of victim. After a thorough review of the record, we conclude that the finding of the motion court that the transcript was inaccurate is supported by the record. Under the particular facts and circumstances of this case, where both movant's trial counsel and the trial prosecutor agreed in their testimony at the evidentiary hearing that the portion of Smith's testimony was transcribed incorrectly, there is clear indication of mis-

take. The testimony of both movant's trial counsel and the trial prosecutor established that they would not have proceeded as they did had Smith testified on direct that victim's "cousin done it," rather than that victim's "husband done it," with respect to the prior abuse. Additionally, both counsel testified that Smith stated that June was victim's nickname for her husband, not her cousin. As a result, we find that the judgment of the motion court that movant's trial counsel was not ineffective because the state, not movant, introduced the hearsay evidence, is not clearly erroneous. Point denied.

■ After the evidentiary hearing on movant's post-conviction motion, he filed a motion to recall the mandate. Movant stated that the transcript upon which this court relied to reach its decision in the direct appeal was incorrect as determined by the motion court. This court conditionally granted the motion to recall the mandate on October 9, 2001, and the motion was consolidated with movant's appeal from the denial of his post-conviction motion on December 10, 2001.

■ Generally, the remedy of a motion to recall the mandate is available to parties when relief is sought from defects in appellate proceedings. *State v. Edwards,* 983 S.W.2d 520, 522 (Mo. banc 1999); (citing *Hemphill v. State,* 566 S.W.2d 200 (Mo. banc 1978)). In the present case, the motion court determined that the relevant portion of the trial transcript considered by the court on direct appeal in Bell II was incorrectly transcribed. As a result of the evidentiary hearing on movant's request for post-conviction relief, the motion court determined that Annette Smith testified that victim told her movant had abused her for the first time on direct examination. This portion of the transcript was relied upon in this court's decision in *Bell II* to deny movant's direct appeal. *State v.*

*Bell,* 14 S.W.3d 67 (Mo.App.1999). Based upon the incorrect transcript, Smith only testified that victim was assaulted by her cousin, not movant, on direct examination. Thus, the court specifically stated that movant himself elicited the testimony that movant inflicted injury upon victim, and he could not complain of something he interjected in the trial. As previously noted, the finding of the motion court that the relevant portion of the transcript considered by the court was incorrectly transcribed is not clearly erroneous.

■ Here, we do not need to decide whether a motion to recall the mandate is the appropriate remedy to address the error in the transcript. Although in the present case such an error exists, the question becomes whether such error prejudiced movant. An inaccurate or incomplete transcript does not automatically warrant a new trial. *State v. Cooper,* 16 S.W.3d 680, 681 (Mo.App.2000). Movant will be entitled to a new trial "only if he exercised due diligence to correct the deficiency in the record and was prejudiced by the incompleteness of the record." *Id.* Here, we do not need to address the diligence of movant in correcting the record, because the issue of resultant prejudice is dispositive.

Even had the transcript been correct for the court's consideration in movant's direct appeal, the statements would not warrant a reversal of movant's convictions. In the present case, the testimony of Annette Smith concerning statements made to her by victim was challenged as inadmissible hearsay in movant's direct appeal. The trial court found that the evidence was otherwise trustworthy and was admissible under the residual exception to the hearsay rule. We do not need to determine whether Smith's testimony was admissible because we do not believe that movant was prejudiced by the admission of such testi-

mony. However, we do note that in a concurring opinion in *Bell I*, a four-judge majority of the Missouri Supreme Court noted that the testimony of Smith would have been admissible under the residual hearsay exception had such an exception been in effect in Missouri at the time of movant's trial. *State v. Bell*, 950 S.W.2d 482, 486 (Mo. banc 1997). The concurring opinion encouraged the adoption of a residual exception to the hearsay rule, but acknowledged that the evidence at issue had not been attempted to be admitted under such an exception; therefore, the exception could not be invoked *sua sponte*. *Id.*

Even if the testimony of Annette Smith in movant's second trial was inadmissible under a residual exception to the hearsay rule, it did not result in any outcome-determinative prejudice to movant. In *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000), the Missouri Supreme Court stated:

> As noted in *State v. Roberts*, 948 S.W.2d 577 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998), the test is whether the prejudicial improper admission was outcome-determinative. *Id.* at 592. There is a distinction between evidence-specific and outcome-determinative prejudice. *Id.* When the prejudice resulting from the improper admission of evidence is only evidence-specific and the evidence of guilt is otherwise overwhelming, reversal is not required. *Id.* In contrast, when the prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required. *Id.* A finding of outcome-determinative prejudice 'expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence.' *Id.*

In the present case, hearsay testimony of Annette Smith was admitted at movant's second trial. Smith testified that she observed injuries to victim, such as black eyes and a busted lip. She stated that victim told her initially that victim's cousin had caused the injuries. Later, victim told Smith that movant had inflicted the injuries.

The direct testimony of Verna Lewis, another of victim's co-workers, was also admitted in the second trial. Lewis testified that she personally observed movant strike victim in the face on two prior occasions at their workplace. One incident of abuse observed by Lewis resulted in a black eye and busted lip to victim.

Annette Smith testified that victim suffered black eyes and a busted lip from movant's abuse. In light of the direct testimony by Verna Lewis that she witnessed movant inflict the same type of injuries upon victim, we do not believe the exclusion of the testimony of Smith concerning her conversations with victim about prior abuse would have impacted the outcome of the case. Additionally, other evidence, such as forensic analysis of victim's home and victim's statements implicating movant was admitted. We do not believe that when considered with all of the evidence at trial, there is a reasonable probability that the exclusion of Smith's testimony would have caused the jury to reach a different conclusion. Therefore, no outcome-determinative prejudice resulted from its admission.

We note that in *Bell I*, the Missouri Supreme Court found that the admission of hearsay testimony did affect the outcome of movant's first trial. *State v. Bell*,

950 S.W.2d at 485. In movant's first trial, the state introduced evidence of several prior acts of abuse. This evidence was brought in through the testimony of two police officers who had responded to different instances of assault as well as additional testimony by Annette Smith concerning statements made to her by victim. In movant's first trial, Smith's testimony was compounded by the additional testimony of the two police officers. In the first trial, Officer Tommy Brown testified that he responded to a call concerning an assault at victim's address. He was told by victim that movant had beaten her continuously for one hour and attempted to break her leg. Additionally, Officer Darren Burkette responded to that call as well as one other. Burkette testified that victim came to the police station on a separate occasion and told him that movant assaulted her because she was talked when she was told not to. These statements established numerous abusive acts of a much more violent nature that were inflicted upon victim by movant.

Annette Smith also compounded the prejudice in movant's second trial with her testimony of additional acts of abuse. When asked about injuries to victim which Smith had observed, she said that victim came to work on different occasions with several black eyes and that victim also came to work on crutches. Eventually, when Smith asked victim about the injury which required crutches, victim told Smith that movant beat her with an iron pipe to inflict the harm.

In the second trial, only the hearsay testimony of Annette Smith was admitted. Neither Brown nor Burkette testified. Additionally, Smith did not testify about the injury to victim's leg and the statement that movant beat victim with an iron pipe. The officer's hearsay testimony coupled with the supplemental testimony of Smith

was far more prejudicial than the evidence introduced in movant's second trial. In *Bell I* the Supreme Court specifically found that, "[g]iven the much greater frequency and severity of the beatings proven by inadmissible evidence as compared with those revealed by competent evidence, there is a reasonable probability that the outcome of the trial would have been different had this hearsay been excluded." *State v. Bell*, 950 S.W.2d at 485. In the present case, we do not believe that any outcome determinative prejudice resulted from the admission of Smith's testimony alone.

Our order provisionally recalling the mandate is set aside and the motion to recall mandate is denied. The judgment of the motion court denying movant's motion for post-conviction relief is affirmed.

GARY M. GAERTNER, P.J., and PAUL J. SIMON, J., concur.